REDMANN, Chief Judge,
dissenting.
“Ziegler I,” decided by another three-judge panel with one dissent, reasoned:
“According to testimony at trial, Ziegler had accumulated almost one year of statutory sick leave. Ziegler argues that he should be allowed to use his sick leave to recover_ Ziegler is ... statutorily entitled to approximately 300 days of sick leave.... [I]t appears that he may eventually be able to function in his posi-tion_ Ziegler may or may not eventually be able to return to the Fire Department. ... He should be allowed his accrued sick leave to rehabilitate himself so that he may return to work. If he is unable to do so, then clearly he should be entitled to his medical pension.
“For the foregoing reasons, the decision of the Civil Service Commission upholding the dismissal of Daniel P. Ziegler on the basis that he was totally and permanently disabled is hereby reversed. Ziegler is to be reinstated, and the time elapsed since his dismissal is to be considered as statutory sick leave.”
That decision ordered reinstatement on “statutory sick leave” for the purpose of allowing Ziegler to “rehabilitate himself” so that thereafter, if able, he could return to regular employment as a firefighter.
That apparently was the understanding of the decision by the fire chief and by the civil service commission, for they did not simply reinstate him but held a hearing on whether he had indeed rehabilitated himself. That apparently was also the understanding of the supreme court, for it denied writs to Ziegler when he unsuccessfully sought in the commission and in this court to be unqualifiedly “reinstated” to his position.
The conclusion by fire chief and commission that Ziegler did not “rehabilitate himself” is, to wear a bit more a well worn adverb, amply supported by the record.
(Incidentally, there is no contention on this appeal that “statutory sick leave” entitled Ziegler to pay that he was denied; and there is no other contention concerning that leave.)
The evidence in the civil service hearing from which the present appeal is taken makes it clear that Ziegler has, to use the fire chief’s words, a “horrendous,” a “horrible” record of absenteeism for “brain disease,” “blackouts,” and (for 111 days) “chronic alcoholism,” a total of 459 days between October 18, 1976 and his termination on August 12, 1981. The record *1361 shows, moreover, that at the time of this second hearing Ziegler declined to pursue realistic treatment for his alcoholism by such excuses as that he feels uncomfortable with the “group” in Alcoholics Anonymous; that he “didn’t need” the antabuse that Dr. Gallant of the substance abuse program had prescribed for him.
Although there was some contrary opinion from medical consultants, Dr. Jack Ruli, official fire department physician and also Ziegler’s personal treating physician, declared that Ziegler was a danger to himself and others and was therefore unfit for regular work as a firefighter. Dr. Ruli’s testimony at this second hearing detailed Ziegler’s medical history of (1) several hospitalizations (including one at Southeast Louisiana hospital at Mandeville; another when he showed “a staggering gait, like a Frankenstein — almost—where you slap your legs when you walk” and it took him two days to become “alert and oriented”); (2) convulsive seizures; (3) mild liver enlargement and enzyme abnormalities; and (4) mild brain atrophy. Most of those Dr. Ruli would to at least some degree relate to Ziegler’s alcohol abuse. Dr. Ruli testified that, although none of those by itself would deter Ziegler’s return to work as a firefighter,
“the biggest deterrent factor is that the man told me he is still a social drinker, or he had become a social drinker [formerly he was “a heavy daily consumer of alcohol”]. Now if I take that, coupled with his history, then this man, I think from a medical standpoint, is on a powder keg, and would be at a tremendously increased risk to himself and to firemen and to whoever he is trying to help in a fire, if he were to return to fire duty.... I think we would be jeopardizing him first, and of course, his fellow men, and the people he works with.... ”
“In reviewing the commission’s findings of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous.” Walters v. Dept. of Police of N. O., 454 So.2d 106, 114 (La.1984).